### In re A. O. BROWN & CO.

### Ex parte GIBBONS–HOVERMANN.

(District Court, S. D. New York. July 6, 1909.)

1. BROKERS (§ 26*)—PROPERTY HELD IN TRUST—SHARES OF STOCK—EARMARKS.
  There is no earmark to shares of corporate stock purchased in the market and held by a broker for the benefit of his customer.
  [Ed. Note.—For other cases, see Brokers, Dec. Dig. § 26.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. BANKRUPTCY (§ 140*)—BROKERS—STOCK IN BROKER'S POSSESSION—PRE-
SUMPTION.

Where a bankrupt firm of brokers converted stock purchased for a
customer and at the time of failure had on hand other stock of the same
character, it would be presumed, in the absence of evidence to the con-
trary, that they properly used their own money to purchase the stock in
their possession and intended to apply the same to make good their mis-
appropriation.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 140.*]

3. BANKRUPTCY (§ 140*)—BROKERS—STOCKS—RIGHTS OF CLAIMANTS.

Where stockbrokers prior to bankruptcy had converted certain corpo-
rate stock belonging to a customer, and at the time of bankruptcy had
100 shares of the same stock in their possession, the owners of the con-
verted stock of that character, if more than one, were entitled to the
stock on hand as tenants in common, and if only one, he was entitled to
have such stock delivered to him, as against the bankrupt's general cred-
itors.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 140.*]

In Bankruptcy.

The question involved in this case is whether, if upon the bankruptcy of
a broker he has in his possession a number of shares of stock which is less
in amount than that which he is bound to deliver to his customers, such
shares are to be regarded as a common fund to which, in equity, all such cus-
tomers are entitled. In this case the claimant had purchased 100 shares of
Bay State Gas stock through the bankrupt firm. The certificate, which had
been purchased by the broker with the customer's money and had been de-
livered to the broker, was subsequently sold by him and was never transferred
to the name of the customer. The purchase price had been in full. Into the
hands of the receiver there came but one certificate for Bay State Gas stock,
that one for 100 shares, not purchased with the customer's money, nor in his
name, and it does not yet appear whether or not there are other customers
of the broker who had purchased Bay State Gas stock. There was no appro-
priation of the certificate in question to the claimant, or to any other cus-
tomer.

Dix W. Noel, for bankrupt.
Fred L. Gross, for claimants.
Ralph Wolf, for receiver and trustee.

HAND, District Judge (after stating the facts as above). The
question in this case turns, I think, entirely upon a question of fact,
namely, whether the broker intended, when he purchased the shares
of stock in question, to apportion them as the property of those
persons to whom he was under obligation to deliver stock of a simi-
lar kind in the place of the stock which he had formerly converted.
We have it on the highest authority that there is no earmark to
shares of this sort. Richardson v. Shaw, 209 U. S. 365 at page 379,
28 Sup. Ct. 512, 52 L. Ed. 835. There are two possible cases:
First, that there are no customers entitled to stock of a similar
character, except the claimant, and that his claim is exactly covered
by the number of shares found in the receiver's possession; sec-
ond, that the claimant or claimants would require for their satis-
faction more shares than those on hand. I presuppose that there
cannot be found any shares actually purchased with the custom-
er's money, and that either the money was not so used at all, or

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that, having been once used, the stock so bought by the broker for the customer he has sold afterwards. The question is whether we should not assume that the broker, in taking from other funds enough to buy an equal number of shares of stock, did not intend pro tanto to attribute that much of his own funds to making good his default. By way of analogy, suppose that an agent depletes a bank deposit made in his name as agent. Subsequent deposits in that fund would go to make good the former conversion, and the general creditors could not complain. Baker v. Bank, 100 N. Y. 31, 2 N. E. 452, 53 Am. Rep. 150. He may make good his default out of his own property, and all that is necessary is some unequivocal appropriation of the property to that effect. Of course, in that case the appropriation was unambiguous, and here we must adopt a presumption; but the question is whether such a presumption is not usually borne out in fact. I think it is. I believe that brokers do usually mean their stocks on hand in the first instance to belong to their customers until they have enough to answer their obligations. If the bankrupts in this case in fact had no such intention, the receiver must show it. A manifest intention being enough, however, I shall adopt the presumption that the purchase of similar stock to that converted is the manifestation of such an intention.

A more difficult question of fact arises in case the stock on hand turns out not to be enough to meet all the obligations to customers. Still in that case I think I must likewise assume in the absence of contradictory evidence, that the broker's intention was to contribute so much of the assets as he invested in this stock in general toward the fulfillment of such obligations. Each share being of equal value and unidentified, he cannot be said to have favored one customer rather than another; nor can I say that, because all the obligations are not fulfilled by the stock which is left, therefore I must assume that he had no intention whatever of fulfilling any part of them. Of course, he did not complete his intention; but so far as he went I think I must assume that he intended to replace the stock which he should have, but did not have, on hand. To adopt the analogy suggested by Mr. Justice Holmes in his opinion in Richardson v. Shaw, supra, suppose an elevator man has depleted the elevator below the amount due to all depositors; when he subsequently puts back into the elevator enough, or part of enough, wheat to answer his obligations to all, the claimants become co-owners of it. Could the elevator man's general creditors claim that they were entitled to the subsequent accretions? Or suppose it could be shown that he had entirely emptied the grain elevator; is there any doubt that his subsequent filling of it, or partial filling of it, must be assumed to be an appropriation by him of so much of his property to make good his conversion? The analogy in law seems to me to be complete in spite of the diversity of the subject-matter.

In this case, therefore, the 100 shares of Bay State Gas are to be regarded as the property of all customers who held such stock. If there are no such customers except the claimant, he is entitled to a delivery of the certificate. If there are, they are tenants in common.

I do not think it necessary for the receiver to go to the expense of sending notice to all creditors, and I direct him not to do this. Let him examine the books of the bankrupt, and see. whether there are any other customers to whom the bankrupts were obligated to deliver Bay State Gas. If there are any such, they should be brought into this proceeding, and if there is any dispute of facts another reference must be ordered. If the facts may be agreed on, the matter can be brought up upon motion day and disposed of by the court.